UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGAR ENRIQUE VELASQUEZ,<br>Plaintiff,<br>v.<br>ROSEMARY NDOH,<br>Defendant. | Case No. 16-cv-02666-HSG<br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br>Re: Dkt. No. 1 |

Pending before the Court is a petition for a writ of habeas corpus under 28 U.S.C. § 2254. *See* Dkt. No. 1. Petitioner Edgar Velasquez challenges the validity of his state court sentence. Having carefully considered the parties' arguments, the Court **DENIES** the petition.

## I. BACKGROUND

### A. State Court Proceedings

On March 1, 2013, Petitioner pled no contest to forcible oral copulation upon a child under Cal. Pen. Code § 288a(c)(2)(B); forcible lewd acts upon a child under Cal. Pen. Code § 288(b)(1); and four counts of lewd acts upon a child under Cal. Pen. Code § 288(a). *See* Dkt. No. 9-1 ("Clerk's Transcript" or "CT") at 114–20; Dkt. No. 9-2 ("Reporter's Transcript" or "RT") at 5–6.[1] He further admitted enhancement allegations that he had substantial sexual conduct with a child under the age of 14, Cal. Penal Code § 1203.066(a)(8), and that he was at least 16 years old at the time he committed the offenses, Cal. Welf. & Inst. Code § 707(d)(1). *See* CT at 114; RT at 4–5. At the time of Petitioner's plea, the court confirmed his understanding that the maximum sentence

---

[1] All references to exhibits are to those submitted by Respondent in support of the answer, *see* Dkt. No. 9, unless otherwise indicated. The Clerk's Transcript and Reporter's Transcript are, in turn, from the underlying state proceedings and similarly filed in support of Respondent's answer. *See id.*

was twenty years. RT at 3.

The sentencing hearing was held that same day. *See* CT at 114. During the hearing, the victim's father, Serafin Del Torro, assisted by an interpreter, made a personal statement. *See* RT at 6–9. Mr. Del Torro stated:

> Before saying that I want to say in reference to this case, so that you may understand what this has affected me—my daughter [the victim, Jane Doe], she was born in Mexico. Before she was born, my wife had a lot of pregnancy issues.
>
> I asked her on many occasions to have an abortion. She never wanted to. So when she was being born, the doctors had told me that she was a girl. I didn't know that she was a girl.
>
> I had told three doctors—the gynecologist, the anesthesiologist—that I didn't want a girl. The reason was because I knew as a child that my sister had been raped two times. My father had tried to rape her when she was a child two times.
>
> And I knew as a child that my father had tried to abuse of his own sister. My own mother suffered physical, emotional abuse from my father, who abandoned us when I was three or four years old. My mother was so sick that my neighbor or would take of us. She would breast feed me.
>
> I also learned that she, who had been like my mother, had been raped when she was eight or 12 years old. None of these people received punishment ever.
>
> When this happened with my daughter, I had many problems. I lost two houses. My oldest son, he knows that he was drugged and raped. Nobody helped me. Nobody helped him. Nobody helped my wife.
>
> When I found out about my daughter, I know that he owes something to my daughter and to all women, to all the women that I love so much. The only thing I asked him was to get away from my home. One or two times I kicked him out of the house also. He was like a son to me because I loved him very much.
>
> I think on one time I gave him a guitar as a gift because he was a friend of my son's. I didn't want to cause any more harm to his parents or to him; but I owed something to my daughter and to all women.
>
> When I made the report and before my daughter received psychological help, we were taking care of her because she tried to kill herself five or ten times. She wouldn't sleep; and neither would we.
>
> I was checking up on her every two or three times during the night. I lost weeks without sleeping to take care of her. Two times we found

> her in the bathroom with scissors trying to cut her veins.
>
> When—what happened to my son, I never received help because I wanted my wife and my son to see that I was strong. I was trying to recover when this happened with my daughter. Even so, I haven't asked for psychological help because—I thought I could take more of this; but it's too much.
>
> I want to—this paper—it says "emotional impact, economic, and a recommendation for sentencing." I don't think you can ever repay me for what my daughter has suffered; so I didn't have to fill it out. Economic—(crying) I don't ask for anything economic. Who is going to pay me? His parents? They're suffering as I am.
>
> I only ask of you to do what you need to do. I don't ask for anything else. I see many cases like these where the people say "I forgive him." I don't forgive you. I will never forgive what you did to me. I loved you very much.
>
> I'm sorry—that's all I have to say. My wife did not want to fill out this paper for respect to his family; and even though I respect them—don't wish them anything bad—I had to come. I had to let them know what had happened to us. And I would want to know what would they put down on this paper. That's all.

*Id.* at 7–9. The victim, although not present, also wrote—and the court read aloud—that "[s]ince this incident I have been suffering from depression. I have trouble being around and getting along with people." *Id.* at 9–10. Petitioner's counsel then urged the court to impose a six-year sentence, arguing in mitigation that Petitioner was only 17 at the time of the crimes; cooperated with police; understood, once he was older, the impact of his actions on the victim; had no other priors; and had since become employed and married. *Id.* at 11–13.

The court sentenced Petitioner to a total of eight years in state prison. *See* CT at 114, 119–20; RT at 13–18. In doing so, the court explained:

> All right. I have listened carefully to Mr. Del Torro. He in particular was an incredibly moving witness. I am aware that [Petitioner] has many loving family members out here who care for him very much.
>
> One of the reasons this came to me with a reduced posture is I am also aware of the fact that many youth at the age of 17 make all sorts of mistakes in their lives and they don't grow and mature until they are pretty much in their mid 20's. That was one of the factors that brought this from what originally was brought to me somewhat as a 12 year case to somewhere between six to eight years. And six would be half of what the People offered.
>
> But I really did want to hear from the victim's family. I wanted to

3

> know the impact. The impression I had – and I don't blame the defense attorney, but the impression I had was that the victim was sympathetic to the defendant, didn't want to see him go to prison; and I almost got the sense that there was not the severe damage that he had caused.
>
> In listening to Mr. Del Torro it is clear – and should have been obvious to me even without the testimony – that a ten year old child – and she was a child – should never have been treated in this way. And having that mark – when we speak of a 17 year old being youthful, a child that is hurt at ten is still wounded at 50.
>
> There is not a time in her life that she will forget this, that it won't mark her in some ways – in the way that she relates to trusting other, particularly men; in the way she relates as a mother if she has a daughter. The way Mr. Del Torro spoke so poignantly about the wounds that he saw when he learned other women that he loved had been raped – and this child, even if she hears of a rape at 20, 30, or 40 will recall hers.

RT at 15–16. When asked by the court, Mr. Del Torro confirmed that the victim's attempted suicide was due to the sexual abuse. *Id.* at 9. Following the sentence, Petitioner's counsel stated that "this is the first we have heard of any suicide attempts by the victim. I believe them to be true; but it is in fact the first time the family or I have heard that." RT at 18.

On appeal, Petitioner claimed that (1) the sentencing court acted unreasonably in imposing the eight-year sentence; and (2) alternatively, trial counsel was ineffective for failing to request a continuance. Dkt. No 9-4, Ex. D at 18–21. On December 9, 2014, the California Court of Appeal affirmed Petitioner's conviction in an unpublished opinion. Dkt. No 9-5, Ex. E at 27–31. In rejecting Petitioner's ineffective assistance of counsel ("IAC") claim, the Court of Appeal reasoned:

> Appellant next contends his trial counsel was ineffective for failing to either request a continuance to investigate the father's statements or attempt to neutralize his statements through the presentation of information demonstrating bias, a motion to strike irrelevant portions of his statement, or cross-examination. We disagree.
>
> For purposes of an ineffective assistance of counsel claim, "[p]rejudice is shown when there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" (*In re Thomas* (2006) 37 Cal.4th 1249, 1256.) Appellant has not shown any reason to doubt the victim's father's statements about the impact of appellant's crime on Jane Doe. As shown above, this fact influenced the trial court's exercise of its sentencing discretion. Appellant has failed to demonstrate a

4

> reasonable probability that any investigation, cross-examination, or other conduct by trial counsel would have resulted in a different sentence.
>
> Appellant also notes trial counsel advised appellant against making a statement at the sentencing hearing. The record indicates the statement appellant wished to make was to the victim's father. Trial counsel told the court: "[Appellant] has expressed his desire to make an apology statement. I told him that would have to come at a different time through writing or therapy. I didn't think it was an appropriate time for him to address the father. He would like to do so." Again, appellant has failed to show prejudice resulting from any deficient performance. The trial court was aware of appellant's remorse. There is no basis to conclude the sentence would have been any different had appellant apologized to Jane Doe's father at the sentencing hearing.

*Id.* at 29–31.

Petitioner filed a petition for review, raising the same claims as on appeal. *Compare* Ex. D at 18–21, *with* Ex. E at 18–24. The California Supreme Court summarily denied review on February 18, 2015. *See* Ex. E at 2 ("The petition for review is denied."). Petitioner did not pursue state collateral review.

### B. Habeas Proceedings

The instant petition was filed on May 17, 2016. *See* Dkt. No. 1 ("Pet."). Petitioner sought two grounds for relief: *First*, Petitioner claimed he was denied his right to due process under the Fourteenth Amendment when the sentencing judge imposed "an eight year prison sentence based on the unreliable and unsubstantiated statement of Jane Doe's father." Pet. at 14–19. *Second*, and in the alternative, Petitioner claimed that his trial counsel provided ineffective assistance of counsel when he failed to request a continuance following the father's statements in order to ascertain their veracity. *See id.* at 7–8. The Court compared the instant federal habeas petition with the petition for review filed in the California Supreme Court and determined that Petitioner had failed to exhaust his due process claims. *See* Dkt. No. 18 at 2–5. The Court, therefore, directed Petitioner to determine whether he wanted to proceed with the single, exhausted IAC claim, or dismiss the action in its entirety and return to state court to exhaust all claims. *See id.* at 5–6. Petitioner elected to dismiss the unexhausted due process claim and proceed in this action with only his IAC claim. *See* Dkt. No. 19. Petitioner's pending habeas petition therefore contains a single claim for ineffective assistance of counsel.

## II. LEGAL STANDARD

A petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state courts adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Williams*, 529 U.S. at 405–06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17

(2003).

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991).[2] Because, as noted above, the California Supreme Court summarily denied Petitioner's petition for review, the California Court of Appeal was the highest court to have reviewed the claims in a reasoned decision. It is therefore the Court of Appeal's decision that this Court reviews herein.

## III. DISCUSSION

### A. Ineffective Assistance of Counsel

Petitioner contends that his counsel was ineffective because he failed to seek a continuance to evaluate the veracity of the statements made by the victim's father, Mr. Del Torro, to the court during sentencing. Alternatively, Petitioner contends that defense counsel could have, even without seeking a continuance, (1) presented information regarding Mr. Del Torro's bias as the victim's father; (2) asked the court to strike irrelevant portions of Mr. Del Torro's testimony; or (3) cross-examined Mr. Del Torro regarding his testimony. *See* Pet. at 7. Specifically, Petitioner posits that Mr. Del Torro's testimony regarding the victim's multiple suicide attempts led the court to sentence Petitioner to eight—rather than six—years in prison, and that his counsel "did nothing" to prevent this. *See* Pet. at 19–20.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.* In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, a petitioner must

---

[2] Although *Ylst* was a procedural default case, the "look through" rule announced there has been extended beyond the context of procedural default. *Barker v. Fleming*, 423 F.3d 1085, 1091 n.3 (9th Cir. 2005). The look through rule continues as the Ninth Circuit held that "it is a common practice of the federal courts to examine the last reasoned state decision to determine whether a state-court decision is 'contrary to' or 'an unreasonable application of' clearly established federal law" and "it [is] unlikely that the Supreme Court intended to disrupt this practice without making its intention clear." *Cannedy v. Adams*, 706 F.3d 1148, 1158 (9th Cir.), *as amended*, 733 F.3d 794 (9th Cir. 2013).

establish two things:

*First*, he must establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Id.* at 687–88. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687. The relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable. *See Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689; *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) ("*Strickland* specifically commands that a court must indulge [the] strong presumption that counsel made all significant decisions in the exercise of reasonable professional judgment." (quotation omitted)). Moreover, "[i]n assessing an attorney's performance, a reviewing court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Summerlin v. Stewart*, 341 F.3d 1082, 1094 (9th Cir. 2003) (quotation omitted).

*Second*, he must establish that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

This *Strickland* framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis. *See Daire v. Lattimore*, 812 F.3d 766, 767–68 (9th Cir. 2016); *see also Cullen*, 563 U.S. at 189. Nevertheless, a "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. *See Cullen*, 563 U.S. at 190; *Harrington v. Richter*, 562 U.S. 86, 88–89 (2011) (same); *Premo v. Moore*, 562 U.S. 115, 122 (2011) (same). The general rule of *Strickland*, *i.e.*, to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway

in reasonably applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010). When § 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105.

Here, Petitioner fails to show how defense counsel's decision not to challenge Mr. Del Torro or the veracity of his statement to the court constituted deficient attorney performance or unsound legal strategy. *Strickland*, 466 U.S. at 687–88. To the contrary, the record indicates that defense counsel's choice not to seek additional time to question or otherwise attack the veracity of the statement was based on "professional judgment" and "strategic choices." *Id.* at 681. Petitioner's counsel strategically relied on Petitioner's remorse and acceptance of his actions as a mitigating factor during sentencing. *See* RT at 11–13. Defense counsel urged the court to impose a lower sentence by emphasizing that Petitioner fully cooperated with police and confessed to the crimes, at times in even more detail than the victim recalled. *See* RT at 11–12. Defense counsel further explained that seven years later, and as an adult, Petitioner "realize[d] the actual impact on the victim" and "the amount of damage that he was doing to her" in a way he did not at age seventeen. *Id.* at 12. Thus, challenging Mr. Del Torro's statement—and by extension, the trauma to the victim—may ultimately have been detrimental to Petitioner and the length of his sentence. *Cf. Parker v. Scott*, 394 F.3d 1302, 1322 (10th Cir. 2005) (reasoning that defense counsel did not provide ineffective assistance of counsel when he decided not to challenge the veracity of a child victim's statement because "rebuttal of this testimony is not necessarily helpful or necessary to [the criminal defendant's] defense").

The Court has carefully reviewed the record and finds no evidence that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. Because Petitioner "cannot even establish incompetence under the first prong," the Court need not address the prejudice prong of the Strickland test. *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998). But as the California Court of Appeal explained, even if counsel had sought a continuance here, Petitioner has not provided any reason to believe that the father's statement was

9

in fact inaccurate. Mr. Del Torro's explanation that the victim attempted suicide because of the abuse is corroborated by the victim's own statement, in which she said she suffered from depression as a result. *See* RT at 9–10. Indeed, defense counsel noted after sentencing that he believed Mr. Del Torro's representations to be true. *See* RT at 18. In a single sentence in his petition, Petitioner alludes to the fact that he sought to address Mr. Del Torro during sentencing but his defense counsel advised him against doing so. *See* Pet. at 19. Yet as the California Court of Appeal found, the record is clear that Petitioner merely intended to apologize to Mr. Del Torro. *See* RT at 13. The trial court, however, was already aware of Petitioner's remorse before sentencing. *Id.* at 11–13.

And even if defense counsel could have otherwise neutralized Mr. Del Torro's statement (*e.g.*, through cross examination or demonstrating bias, as Petitioner suggests), Petitioner already admitted to the egregious acts against the victim. As the state court explained, "it should have been obvious . . . even without the testimony – that a ten-year-old child – and she was a child – should never have been treated in this way." RT at 15–16. The court further noted the enduring impact of Petitioner's conduct: "There is not a time in her life that she will forget this, that it won't mark her in some ways – in the way she relates to trusting other, particularly men; [and] in the way she relates as a mother if she has a daughter." *Id.* And the so-called "bias" of the father of a young girl who was the victim of sexual assault would be obvious to the sentencing court. In short, the court's explanation indicates that it was Petitioner's conduct and the age of the victim that directed its sentencing choice.

In sum, Petitioner has failed to demonstrate ineffective assistance of counsel. The state court's denial of the ineffective of assistance claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court. Nor was the state court's denial of this claim based on an unreasonable determination of the facts. Federal habeas relief is denied on this claim.

### B. Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of

appealability. *See* Rules Governing § 2254 Case, Rule 11(a). A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. *Id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

## IV. CONCLUSION

Accordingly, the Court **DENIES** the petition for a writ of habeas corpus, and **DENIES** a certificate of appealability. The Clerk shall enter judgment in favor of Respondent and close the case.

**IT IS SO ORDERED.**

Dated: 9/27/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge